We'll take up U.S. v. Devault Good morning, and may it please the Court. I'm Karen Landau. I represent Lamont Devault, and my co-counsel is Verna Weefald. She represents DeAndre McIntosh. I'll be addressing the sentencing issues for my client, and I'd like to save a minute for rebuttal. And if I have extra time, I would happily cede it to Ms. Weefald, if you don't have a lot of questions. Let me get straight in my mind, because there's two defendants. You're on the conviction in this case. You're not challenging the sufficiency of the evidence. No, no, Ms. Weefald is challenging the sufficiency of the evidence. I know, that's right, but you're not challenging. No, I'm not. And so your only challenge to the conviction is the one you're seeking to preserve for purposes of further appeal. That's correct. I mean, I could argue it. If you have any, if anyone wants to talk about it, that's fine. You can talk about whatever you want. I just want to get this. So really, the only challenge you want to talk about, you at least want to talk about at the outset today, is the sentence. Yes, that's correct. Thank you. That's correct. And I do just want to say, it's really nice to be back. We feel the same way. Yeah, I'm glad. I'm glad. So in this case, so my client, I won't belabor the facts. I won't belabor the facts of this case. The district court really didn't make an adequate record or state any, provide any statement of reasons under 3553A for imposing a consecutive term. My client was already serving an indeterminate California state sentence, which appears to be something like 57 years to life, but it's, it's, he was doing, he's got a life sentence. And so on top of that, now he has... But didn't he? This is what I'm, I'm having trouble with the record here. At least in terms of the total sentence, what the judge seemed to be saying is, look, these guys are in jail and purposes of deterrence aren't going to work unless I do something that hurts them more than their current sentences. He didn't, he didn't expressly say, and therefore a consecutive sentence is required, but isn't, isn't that enough under the guidelines? If he'd said that, it would be, but he didn't really say that. He didn't say anything about remorseful, but who did not, you know, had gone to trial. My client, he listened to him. He ruled against the government's request for a rule increase, which is in the record. You know, obviously we're not disputing that. And then he imposed the consecutive term. But the only factor he referenced was this, the guidelines, which call for consecutive term. No, actually he said, I'm looking at ER 16. There are all the other inmates in prison who are looking at this case and to know that one, they shouldn't get freebies because they're already in prison and therefore a concurrent sentence would be inappropriate. Um, and so, Oh, I guess I overlooked that. Um, but I'm not actually ER 16, ER 116. Yeah, I have in my notes, of course, may be wrong. I have ER 16. It may be 116. Actually, I think that's the prosecutor talking. I have 16. Okay, it's the prosecutor talking. And does the judge adopt that? No, he doesn't. And that's the thing. It's Mr. If you go to ER 13, it's Mr. Kakar, who I assume was the prosecutor. And he says, three points, Your Honor, I'd want to bring to the court's attention. And that is an argument that the prosecutor makes, as is his right. But the court doesn't adopt that. Court doesn't then say, you're right. No, and the court doesn't. Okay, so let me turn. Thank you for clarifying that. So let me turn to the second thing. The judge says, well, the guidelines call. He doesn't treat them as mandatory, but he does reference the guidelines. Does that, is that a sufficient, in other words, the guidelines are advisory. I'm taking the advice of the guidelines. Why doesn't that? But he doesn't say they're advisory. He says the guidelines, and I'll, He doesn't say require. He doesn't say, this is, I actually have this highlighted. So he says, he says, he says, this is what he says. This is all he says. In this particular case, the court is going to find that the guideline, sorry, the guideline level in this case is a level 34, category 3, which is 188 months to 235. I'm not going to increase the two-level increase because he didn't leave the cooperator. And then he says, so therefore, and also under section 5G 1.3a, it's indicated in the sentencing guideline that this is a consecutive sentence, so not a concurrent one. That's all the judge says. And so that's why, I mean, we made the, I also argued that it, you know, the record leaves a lot of doubt as to whether he considered that mandatory. And in fact, the guideline is phrased mandatorily, although, as we all know, they're advisory. So there we have it. But doesn't Judge Klosner know they're advisory? Well, we do presume that the judge knows the law, but, you know, judges occasionally forget, or they get confused, or they're unclear, and the record is not clear. And again, there's no other reference. You know, the judge doesn't say, okay, I'm considering all the 3553a factors, and I adopt the prosecutor's arguments, or deterrence is needed, or, you know, all these things. Nothing about the specific nature and history of the defendant who, you know, has had a difficult life, although he's also, you know, he's in prison. I mean, I'm not trying to minimize that. So is your issue with the judge that he didn't say the advisory, or the guidelines are advisory? I mean, he says this is what they say, and he was accurate in saying what the guidelines say. And so if he had said, but they're only advisory, and then followed them, it'd be okay? I would have a much weaker argument. I would, but I would still have the, there would still be the argument about the inadequate statement of reasons. But the first argument, well, yes, that would kind of eliminate that, wouldn't it? But he didn't say that. If there's no further questions, I'll... All right, thank you. See you, Ms. Glenda. Good morning. Verna Weefald on behalf of DeAndre McIntosh. I want to address the only issue that was raised in the opening brief, which is the sufficiency of evidence. And this new case that just came down, Mendoza, I think is right on point. Well, it's right on point, but, and I understand what the published opinions are, but isn't it adding an element to conspiracy that is not in the statute? Well, we have to go back to all of the law. I mean, the law in conspiracy is actually pretty settled, and I think Mendoza does not add anything new. It just clarifies what you really have to look at when you're talking about conspiracy, because it's not enough to just say he's connected to the co-defendants and that there's a slight connection. I mean, you have to show that, and I think the way Mendoza put it, which is very, I think, important, was there a prolonged and actively pursued course of sales? Did the defendant have knowledge and a shared stake in the conspiracy? And in this particular case, we don't have any of that. So you don't have direct evidence of that, but aren't there inferences under the circumstantial evidence that could be drawn that satisfy even Mendoza? I disagree. I think that under the circumstantial evidence that we look at in this case, which are the wiretaps and the text messages, there's really nothing here more than a buyer-seller. Except they're in prison. That's a little different, isn't it, than if somebody on the street goes down to the corner and picks up whatever heroin or methamphetamine. These are people locked up, and they have a communication system, and one of them has got the outside connection with his son and the cook, and then he's arranging to disperse these drugs with others inside. That's true. However, for one thing, Mr. McIntosh was clearly wanting cell phones. He's been in trouble with cell phones before. He wanted tobacco. And in terms of the drugs, he's also been in trouble for testing positive for marijuana. Although I often, when representing criminal defendants, try to argue that they couldn't have been stupid enough to do it this way, and it never worked for me. But I think you also have to understand the dynamics of prison, and I've represented hundreds of prison inmates, people who are doing life sentences in state prison. And, yes, Mr. DeVault, he had the contact. He had his son. His son went and dealt with Medina, who was the civilian employee, and then there were the other ones, Ben Coleman and so on. But in the prison, drugs are flowing all the time. And, unfortunately, lots of correctional officers and civilian employees are the ones that are able to bring these drugs into the prison because they are not as searched the way visitors and so on and lawyers. But the buzz in a prison would be, you know, do you want to buy some methamphetamine? Do you want some heroin? Do you want some marijuana? Do you want something else? Because, you know, we can sell you some. And that's the way it goes. On this record, couldn't a reasonable finder of fact infer that your client was part of a distribution ring? No. The only possible inference in this case was that he was purchasing for his own use? Based on the evidence that was introduced. Well, how much did he purchase? Well, he purchased a lot. He didn't actually purchase. I know. I understand. But how much did he arrange to purchase, if you will? Right. Well, you know, there's cell phones, the tobacco. And he clearly there is some. With respect to the drugs, how much did he arrange to purchase? You know, I can't remember the exact amount. I thought it was a fairly large amount. Was it not? Well, it's based on, you know, terms of like, you know, depositing money, $1,290. But, you know, think about this thing here. Cell phones are a lot more expensive than the amount of drugs that he was purchasing. I mean, cell phones are not cheap. You know, even these, what do you call them, burner phones and that kind of thing like that. They cost a lot of money. And he wanted $12 or something, like $8, depending on how much. And we have to look at what the government introduced. So we have the, you know, the deal is already the drugs are delivered to Mr. Medina on October the 23rd. The first communication between Mr. DeVault and my client is October the 28th. You know, he's saying, you know, I want to purchase, you know, this, that, and the other. There's nothing in any of these messages that says, you know, particularly when Medina got arrested. And DeVault says, you know, they cracked that guy. And how long is it going to take before they start searching the cells? Because Mr. McIntosh says, well, maybe four to five days. But he doesn't say anything about, gee, that really messes up our deal. There is one piece of evidence that the government may rely on, and I think they did in their brief, that shows that Mr. McIntosh was anything other than a buyer-seller. And that's a statement. Supposedly Medina says, who else is in it? And DeVault says, this guy named McIntosh. But what does in it mean? It could mean anything. And so the problem we have here is that any argument that Mr. McIntosh was actually actively involved, a prolonged court, actively involved in this conspiracy to bring the drugs in and disperse them in the prison is that one statement which is very vague and therefore speculative. And under the sufficiency of evidence rules, you can't rely on speculative evidence. I see I'm running out of time. If I could just save a few minutes for rebuttal. All right. Thank you, Counsel. Good morning, and may it please the Court. Ben Balding on behalf of the United States. I'll address the issues, I guess, out of order. I'll start with the sufficiency of the evidence, if that's all right with the Court. And to answer, Your Honor, Judge Hertz's question about how much drugs was McIntosh buying, in the context here, the answer is all of it. He was buying everything that DeVault was able to smuggle in. How can I tell that from this record? So if you look at the record, the record shows that the first day, that's November 10th, Medina, who is the cook, smuggled in one package. That was never seized, so we don't know exactly how much that is. But the communications in the record, which are at McIntosh's excerpts from pages 17 through 20, there are these text messages talking about, I got one in yesterday. Now, there's some confusion if you look at it, but they call it the white. And again, white, black, that was argued down below, and I think at this point the Court must take the reasonable inference that white means methamphetamine. We briefed that. But taking that inference, which the Court must, they're talking about, they think one ounce of white. McIntosh responds. When you say talking about, who's talking about that? McIntosh and DeVault, the two co-defendants who are here. DeVault's the one that arranged to have it smuggled in. Right, right. McIntosh is the downstream distributor, I think, is what we've argued, I think what the Court has honed in on. And so McIntosh wants to buy whatever DeVault was able to get smuggled in. He says, what, 15? 15 referring to the price. And we know that because later. It turns to 25. It turns to 25. And again, this is the kind of communication that's classic dealing, knowing the prices, familiarity, long-term type of arrangement. Why isn't that equally consistent with being an addict buying? Well, again, I think Judge Molloy honed in on what's important here. This is a prison context. The way they make money is by having someone in the prison that can further distribute. And the record is clear that they're in different cell blocks. They're only able to communicate by these contraband cell phones. And when Medina talks, I think my opposing counsel said that he says, who else is in it? What does in it mean? Well, if you look at that reference on ER 274 when Medina the cook is talking, if you read up a little bit, the question started with a question about the drug distribution, not about cell phones, not about other things. He's like, who's he asked, did you ever ask about the drug distribution? And later on, he says, who else was in it? He says McIntosh. So that is, I would submit, is direct evidence of McIntosh and DeVault. Can you help me with the record on ER 14? There's a text message. Who is it? Who is it to and who is it from? Are you talking about McIntosh's ER? I apologize. Yeah, it's, I think it's McIntosh's ER. But it's a message that says, I want three green, two black, one white. Right. And, Your Honor, to just, this is from McIntosh to DeVault. And I'll direct you to SCR 30 and 29 and 30. That's the government supplemental. There's a chart that lays out each text. Right, but this is from McIntosh to DeVault. From McIntosh to DeVault. So, yes, this is McIntosh five days after their drugs are exchanged on the outside. But before they're ever smuggled on the inside, I want three green, two black, one white, one K-8. Now, there's testimony in the record that the K-8 refers to a cell phone. And I think, as I've argued before, the black and the white are heroin and methamphetamine, respectively. So he's paying $12,900. I mean, the drugs he's buying are not a personal use amount. The drugs he's buying are the entirety of what DeVault's able to get in there. And then, as DeVault said, they split it up and do what they do. Again, I think the real crux is how you define the conspiracy. I think the opposing counsel has attempted to define it as simply a conspiracy to smuggle drugs into a prison. But it's broader. The conspiracy charge is to distribute controlled substances, including methamphetamine. And part of that, of course, is smuggling it into the prison. But an equally important part is distributing it downstream within the prison to make money, funding it back to continue this deal. So, again, with this record, I think you can make the, or at least you cannot say that no rational jury could have found him to be a member of the conspiracy on this record. What do you make of Mendoza, the recent case? I think, again, it's a fact-specific, but everything in Mendoza is consistent with this interpretation of these facts. Because, first of all, as Mendoza confirmed, you have to look, you have to draw the reasonable inferences in favor of the government's arguments. And that is, of course, the white means methamphetamine, black means heroin. So, looking at their communications with that in mind, you then look at the specifics. First of all, Mendoza had no direct evidence. And I would, as I said, I would submit that there is direct evidence in the form of Bedida's direct testimony of McIntosh's involvement. It's not that strong. It's, you know, it's a hearsay statement. But the jury obviously gave it whatever weight it did. And then you look at McIntosh's specific involvement, and I think it reflects, even under Mendoza, a consistent pattern of not just a buyer-seller one-off transaction or someone feeding a drug addict, feeding a habit, but rather someone who's familiar with this process, 15 for white, 25 for black, knows the accounts they're supposed to go to. And, again, if you look at McIntosh's excerpt record 24, I believe there's less than an hour after he finds out it's heroin and it's 25, McIntosh says, I'm going to send you $1,250 and $1,250, $2,500. So, again, I think this confirms this familiar process. It's not a one-off buyer. Again, even if you look at the record, that really wasn't the argument at trial. The argument was that it was a conspiracy for cell phones and that he didn't know it was methamphetamine. But those arguments were rejected. So I think this idea that he's a mere purchaser with a drug habit is at least there was enough evidence for the jury to find otherwise. Can I ask you to address this sentencing issue? Of course, Your Honor. And I guess that would only be for Mr. Duvall. But the record's a little thin here, I guess, is my concern, as it was in the last case. It was the same judge. Yeah. And I assume the judge knows the law, so I'm not thinking the judge was mistaken into thinking that the guidelines were mandatory. But the reasoning for imposing the consecutive sentence, as your friend pointed out, mostly comes from the U.S. attorney, who says, here's a good reason to give him a consecutive sentence. And the judge doesn't say, I agree or I think you're right. He just says, well, the guidelines say it should be consecutive. And I think if one were just following the guidelines, that would be fine. But shouldn't we – I mean, again, I have no confidence that it would result in a different sentence if we remanded. But isn't there a value in district judges doing this right? Well, I think there's – I think it goes a lot to the plain error standard, Your Honor, because here, unlike the other case, there are a few notable differences. Also, I don't have a name to drop. It was just a lowly – my co-counsel is arguing at trial. But maybe that actually helps me. It was just me and my lowly co-counsel at sentencing. But here, what the judge did, he didn't fail to rule on objections. He didn't do anything out of the ordinary. He found a guidelines – low-end guidelines sentence. Now, the consecutive nature is the guidelines sentence. And if you look at the entire record, the sides argued it extensively. And there's nothing in the record that suggests he didn't consider that and that he wasn't making a run-of-the-mill, so to speak. And I don't mean to minimize the importance to the defendants. But as the Supreme Court and the cases have held, in a low-end guidelines sentence, you don't need much. And here, you can rely on the inferences from the PSR, the arguments of the parties, and the fact that – But did he address – that's my guess. My more precise question is – and by the way, I think substantively there's nothing to quarrel with the sentence. The question is whether the judge addressed the argument, gee, judge, if you give me that, I'll die in prison. Now, it may well be that this defendant would die in prison anyway because he's got a California life sentence he may or may not get paroled from. But does the judge have to address that question? I don't think he does when he goes with the guidelines here, Your Honor, because, again, it does seem harsh, right? But the fact of the matter is, as the prosecutor argued, if not a consecutive sentence, this is essentially a free pass, and the prison's – this is a serious problem. No, I think the – when I thought the judge said it, I thought it was a wonderful explanation. Now that I know only the prosecutor said it. Maybe he just didn't want to try to better it from what the prosecutor had said, so he adopted it. But, no, he didn't make a formal, I adopt this, I adopt this. However, I don't think – again, when it's a low-end guidelines sentence, I don't think he has to. And to reiterate what was said, the government actually asked for an enhancement. The judge did rule on that. He said, I'm not going to imply that. And so when you look at the range that was being argued and the arguments that were presented, and there's no – there's nothing else in the record suggesting he failed to follow the applicable rules by, for example, not letting a party speak. I mean, he let everybody speak. He let the defendant speak for as long as he wanted. And then he ruled. Again, as with before, a more thorough record would have made my job a lot easier on this point. But, again, I don't think plain error – if there was anything – if there was ever a time where plain error review should apply to preclude resentencing or remand for resentencing, it's here because it didn't affect the fairness of the procedures. There's nothing that would suggest a different sentence would be made. And not that that's the only consideration, but, again, this just doesn't seem to be the case where a remand would have any meaningful effect. Unless there's anything else I would submit. Thank you. We have two minutes, although you were over. Yeah. This record does not show that McIntosh was, quote, the downstream distributor for this whole conspiracy. McIntosh, in fact, said, I want, you know, specific amounts of this. He didn't say, you know, yeah, just give me the whole thing and I'll take care of it. That's not what happened here. And we have to be – I think we're being a little naive about what prison life is like. Thank God I haven't, you know, personally been in there. But there are, yes, lots. I've been to Sentinella and many of these state prisons many times, and there's different, you know, sections, you know, A, B, C, and D. But the word travels fast throughout the entire facility. You have people moving around who are working, people out in the yard, people are moving in, you know, working in the different, you know, the kitchen and in the clerk's office and that sort of thing like that. Word travels fast. We also have visitors passing on information to other inmates about, you know, hey, there's a supply coming in and you want to buy something. We just don't know who all those people are, and it would be absurd to think that this whole conspiracy was just relying on McIntosh in order to distribute the drugs. And there's also things like kites, people pass messages that way. So we have to take all that into consideration. So it is entirely speculative that Mr. McIntosh was involved in this conspiracy. Thank you. All right. Thank you, counsel. U.S. v. Duval and McIntosh is submitted. Rowe v. Stanford Health Care has previously been submitted, and this session of the court is adjourned for today. Thank you. All rise.
judges: WARDLAW, HURWITZ, Molloy